# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

_____
)
SOLOMON TECHNOLOGIES, INC.,      )
      )
              Plaintiff,    )
v.      )     CASE NO. 8:05-cv-01702-JDW-MAP
      )
TOYOTA MOTOR CORPORATION,     )
TOYOTA MOTOR SALES, U.S.A., INC.,  )
TOYOTA MOTOR ENGINEERING AND  )
MANUFACTURING NORTH AMERICA, )
INC., AND TOYOTA MOTOR     )
MANUFACTURING KENTUCKY, INC.,  )
      )
            Defendants.   )
_____)

## MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     UNDISPUTED FACTS ........................................................................................1

III.    PROCEDURAL HISTORY ..................................................................................2

IV.     ARGUMENT .......................................................................................................2

        A.      Summary Judgment Standard .................................................................2

        B.      Patent Infringement Standard .................................................................2

        C.      *Solomon v. ITC* Is Controlling Precedent ..............................................3

                1.      The *Texas Instruments* Case .....................................................4

                2.      The *Thomson* Case ....................................................................8

                3.      The *3M* Case ...............................................................................8

                4.      The *Fuji Photo Film* Case .........................................................9

                5.      The *Alloc* Case ...........................................................................9

        D.      Summary Judgment Is Warranted Because the Federal Circuit Held
                That the Accused Toyota Vehicles Do Not Infringe Claim 7 ...............11

                1.      The Federal Circuit Held That the Accused Vehicles Do Not
                        Satisfy the "Power Conversion Means" Limitation ....................12

                        a)      The Federal Circuit Determined the Proper
                                Construction of the "Power Conversion Means"
                                Limitation .......................................................................12

                        b)      The Federal Circuit Determined That the Accused
                                Vehicles Do Not Infringe ................................................13

                        c)      Solomon's Current Arguments Are Unavailing ..............15

                2.      The Federal Circuit Held That the Accused Vehicles Do Not
                        Satisfy the "Integral Combination" Limitation ..........................17

                        a)      The Federal Circuit Determined the Proper
                                Construction of the "Integral Combination" Limitation ...............17

b)     The Federal Circuit Determined That the Accused Vehicles Do Not Infringe .................................................................19

c)     Solomon's Current Arguments Invite Legal Error ........................20

3.     The Federal Circuit Held That the Accused Vehicles Do Not Satisfy the "Envelope" Limitation .............................................................22

a)     The Federal Circuit Determined the Proper Construction of the Term "Envelope" ...........................................22

b)     The Federal Circuit Determined That the Accused Vehicles Do Not Infringe .................................................................23

c)     Solomon's Current Arguments Are Meritless .............................24

V.     CONCLUSION .....................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*Al- Site Corp. v. VSI Int'l, Inc.*,
   174 F.3d 1308 (Fed. Cir. 1999) ....................................................................... 16

*Alloc, Inc. v. Norman D. Lifton Co.*,
   No. 03 Civ. 4419 (PAL), 2007 WL 2089303 (S.D.N.Y. July 18, 2007) .............................. 9

*American Honda Motor Co., Inc. v. Coast Distribution System, Inc.*,
   No. C 06-04752 JSW, 2007 WL 672521 (N.D. Cal. Feb. 26, 2007) ................................. 7

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006) ....................................................................... 13

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
   268 F.3d 1352 (Fed. Cir. 2001) ....................................................................... 14

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
   49 F.3d 1575 (Fed. Cir. 1995) ......................................................................... 3

*BillingNetwork.com, Inc. v. Cerner Physician Practice, Inc.*,
   509 F. Supp. 2d 1172 (M.D. Fla. 2007) ............................................................... 3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................... 2

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
   145 F.3d 1303 (Fed. Cir. 1998) ....................................................................... 13

*Colida v. Ericsson, Inc.*,
   93 Fed. Appx. 220 (Fed. Cir. 2004) ................................................................... 24

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*,
   64 F.3d 1553 (Fed. Cir. 1995) ........................................................................ 24

*FormFactor, Inc. v. Micronics Japan Co., Ltd.*,
   No. CV-06-07159JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) .............................. 7

*Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*,
   173 F. Supp. 2d 268 (D.N.J. 2001) .................................................................... 9

*In the Matter of Certain Combination Motor and Transmission Systems and Devices Used Therein, and Products Containing Same*,
 Investigation No. 337-TA-561, 2007 ITC Lexis 377 (ITC February 13, 2007) ........ 2, 12-14

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
 424 F.3d 1336 (Fed. Cir. 2005) ........................................................................... 15

*Mas-Hamilton Group v. LaGard, Inc.*,
 156 F.3d 1206 (Fed. Cir. 1998) ............................................................................. 3

*Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*,
 194 F.3d 1250 (Fed. Cir. 1999) ........................................................................... 16

*Minnesota Mining and Mfg. Co., Inc. v. Beautone Specialties Co.*,
 117 F. Supp. 2d 72 (D. Mass. 1999) ...................................................................... 8

*MyMail v. America Online*,
 476 F.3d 1372 (Fed. Cir. 2007) ........................................................................... 15

*Newell Cos. V. Kenny Mfg. Co.*,
 864 F.2d 757 (Fed. Cir. 1988) ............................................................................... 5

*Odetics, Inc. v. Storage Tech. Corp.*,
 185 F.3d 1259 (Fed. Cir. 1999) ........................................................................... 12

*PCTEL, Inc. v. Agere Systems, Inc.*,
 No. C03-02474 MJJ, 2006 WL 734385 (N.D. Cal. March 20, 2006) ................................. 7

*Praxair, Inc. v. ATMI, Inc.*,
 543 F.3d 1306 (Fed. Cir. 2008) ........................................................................... 24

*Sage Products, Inc. v. Devon Industries, Inc.*,
 126 F.3d 1420 (Fed. Cir. 1997) ........................................................................... 16

*Seal-Flex, Inc. v. Athletic Track and Court Const.*,
 172 F.3d 836 (Fed. Cir. 1999) ............................................................................. 15

*Solomon Technologies, Inc. v. ITC*,
 524 F.3d 1310 (Fed. Cir. 2008) ................................................................... *passim*

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
 90 F.3d 1558 (Fed. Cir. 1996) .................................................................... *passim*

*Thomson Consumer Electronics, Inc. v. Innovatron, S.A.*,
   3 F. Supp. 2d 49 (D.D.C. 1998) ............................................................................ 8

*Tonkovich v. Kansas Bd. of Regents*,
   254 F.3d 941 (10th Cir. 2001) ............................................................................ 17

*Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*,
   206 F.3d 1408 (Fed. Cir. 2000)............................................................................ 3

## Federal Statutes

28 U.S.C. § 1659 ............................................................................................................ 2

35 U.S.C. § 112.................................................................................................... 3, 12, 13

Fed. R. Civ. P. 56(c) ...................................................................................................... 2

## I.    INTRODUCTION

This motion for summary judgment presents two fundamental legal questions:

(1)    Are the Federal Circuit's findings and conclusions in *Solomon Technologies, Inc. v. ITC*, 524 F.3d 1310 (Fed. Cir. 2008), binding on this Court?

(2)    If so, what did the Federal Circuit hold?

Neither of these purely legal questions requires this Court to construe the claim limitations of U.S. Patent No. 5,067,932 ("the '932 patent") or apply them to the accused vehicles, and it would be improper to do so because the answer to the first question is yes.

Arguably, if the Court answers the first question in the affirmative, it need not answer the second question at all.  Because the Federal Circuit found no infringement and its holding is binding here, this Court need do nothing more than follow the Federal Circuit and grant summary judgment of noninfringement.  However, if the Court wishes to develop a full record for Solomon's second appeal, Toyota also answers the second question below.[1] Toyota also shows why Solomon's arguments for second-guessing the Federal Circuit are irrelevant here.

## II.   UNDISPUTED FACTS

This motion is based exclusively on the two legal issues identified above.  No facts outside *Solomon v. ITC* are material to this motion.  To the extent that the Federal Circuit made factual findings in *Solomon*, they are not now subject to dispute by the parties.

---

[1] In this regard, Toyota described in the March 4, 2009 Joint Report the ITC's and Federal Circuit's rulings and the parties' arguments there and here (Dkt. 58).  Toyota incorporates by reference its statements made in the Joint Report.

III.    **PROCEDURAL HISTORY**

Solomon filed its Complaint in this Court on September 12, 2005.  (Dkt. 1)  On January 30, 2006, Solomon filed an ITC action and the parties and this Court stayed this action under 28 U.S.C. § 1659.  (Dkt. 7, 8)

During the ITC proceedings, the parties engaged in extensive discovery.  For example, Toyota alone produced approximately 300,000 pages of documents, and the parties took over 30 depositions, with no time limit.  After a five day trial, the ITC ruled in Toyota's favor, finding that the accused Toyota vehicles do not satisfy any of the four claim limitations that Solomon reasserts here, and therefore that such vehicles do not infringe claim 7 (the only claim asserted at trial).  *See In the Matter of Certain Combination Motor and Transmission Systems and Devices Used Therein, and Products Containing Same* ("Solomon ITC"), Investigation No. 337-TA-561, 2007 ITC Lexis 377 at *2, 171, 217, 301 (ITC February 13, 2007), approved by Comm'r, 72 FR 25776, 25776-77 (ITC May 7, 2007).

Solomon then appealed.  After a *de novo* review, the Federal Circuit affirmed. Solomon did not move for panel rehearing or rehearing *en banc*, or petition the Supreme Court for *certiorari*.  Instead, on July 18, 2008, Solomon moved to reopen this case.  (Dkt. 9) After considering the parties' positions, as presented to the Court since that time, this Court invited Toyota to file this motion for summary judgment (Dkt. 69).

IV.    **ARGUMENT**

A.    **Summary Judgment Standard**

A court should grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This motion involves only legal issues.

B.    **Patent Infringement Standard**

Infringement exists only "if each of the limitations of the asserted claim(s) read on,

that is, are found in, the accused [product]." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995). If even a single claim limitation cannot be found in the accused product, either literally or under the doctrine of equivalents, there cannot be infringement as a matter of law. *BillingNetwork.com, Inc. v. Cerner Physician Practice, Inc.*, 509 F. Supp. 2d 1172, 1177-78 (M.D. Fla. 2007); *Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1414-15 (Fed. Cir. 2000) (affirming no infringement where a limitation was lacking); *Mas-Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("If even one limitation is missing or not met as claimed, there is no literal infringement.").

Here, the ITC and the Federal Circuit have already found that *several* claim limitations are absent from the accused Toyota vehicles, specifically, the "power conversion means," "integral combination," and "envelope" limitations. These limitations appear in each of the four claims Solomon now asserts, i.e., independent claim 7 and, by extension, dependent claims 8, 10, and 12 (Dkt. 58 at 14-15, 35-36, 49). *See* 35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). Because several limitations are absent from the asserted claims of the '932 patent, Toyota cannot be found to infringe.

## C.    *Solomon v. ITC* **Is Controlling Precedent**

The Federal Circuit has already decided the meaning of the three claim limitations at issue here.[2] The Court did not simply "rubber stamp" the ITC's claim construction, but construed these limitations *de novo* and held that Toyota does not infringe claim 7 of

---

[2] This motion does not address the "continuously variable" limitation. Although the Federal Circuit construed this limitation, the Court omitted this limitation from its affirmance of the ITC's noninfringement holding. Because infringement is impossible unless all limitations are present, and because the Federal Circuit affirmed noninfringement based on the absence of the three limitations covered by this motion, the "continuously variable" limitation is immaterial to this motion and to this Court's ability to grant summary judgment for Toyota.

Solomon's patent. *Solomon*, 524 F.3d at 1310. That holding controls as to claims 8, 10, and 12 as well because they depend from independent claim 7.

As the Federal Circuit recognized in *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996), discussed below, the "[d]istrict courts are not free to ignore holdings of [the Federal Circuit] that bear on cases before them." The Court also held that "[a]s a Court, we are bound to follow our own precedents, and, to the extent that we have previously ruled on a matter, a subsequent panel will have powerful incentives not to deviate from that prior holding, short of thoroughly justified grounds." *Id*. Thus, the Federal Circuit's *Solomon* ruling is *stare decisis* here. If this Court construes the three claim limitations at issue in this motion and finds different constructions for all three limitations, and infringement, the Federal Circuit is unlikely to affirm.

Even if the Federal Circuit's *Solomon* decision were not controlling, Toyota respectfully urges this Court to adopt it as accurate and well-reasoned. As the cases following *Texas Instruments* indicate, the Federal Circuit is unlikely to affirm any contrary holding.

### 1.    The *Texas Instruments* Case

In 1996, the Federal Circuit decided the appeal from an ITC investigation between Texas Instruments and Cypress Semiconductor, where the ITC found patent infringement. The Federal Circuit construed Texas Instruments' patent claims *de novo* and affirmed the ITC. *Texas Instruments*, 90 F.3d at 1562-63. Texas Instruments also sued the same companies for patent infringement in district court. The jury found infringement, but the court set aside part of the verdict and found no infringement, based on insufficient evidence. *Id.* at 1562, 1568.

The Federal Circuit then affirmed the district court, stating that **ITC decisions** have no preclusive effect on district courts. But the Federal Circuit did not say that Federal Circuit affirmances of ITC decisions have no such effect. Instead, the court said:

> TI also argues that by our denying preclusive effect to ITC determinations and to our decisions in appeals from ITC decisions, district courts would be free to ignore our decisions. That is not correct. District courts are not free to ignore holdings of this court that bear on cases before them.

*Id.* at 1569. Nor can the Federal Circuit ignore its own prior rulings:

> Subsequent panels of this court are similarly not free to ignore precedents set by prior panels of this court.

> . . . As a court we are bound to follow our own precedents, and, to the extent that we have previously ruled on a matter, a subsequent panel will have powerful incentives not to deviate from that prior holding, short of thoroughly justified grounds.

*Id.* In discussing the doctrine of equivalents, the court also quoted its decision in *Newell Cos. V. Kenny Mfg. Co.*, 864 F.2d 757 (Fed. Cir. 1988), as follows: "This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*." *Texas Instruments*, 90 F.3d 1567 (citations omitted). As mentioned above, Solomon did not petition for *en banc* review.

Solomon has argued that under *Texas Instruments*, this Court can simply ignore the Federal Circuit's ruling in *Solomon* because the Federal Circuit upheld an ITC infringement holding, and later upheld a noninfringement ruling from the district court between the same parties on the same patent. (Dkt. 20 at 4-6) Solomon's argument oversimplifies *Texas Instruments* and misses its point.

In fact, in *Texas Instruments*, the Federal Circuit treated its own affirmance of the ITC determination as *stare decisis* and followed the principles quoted above. Based on two key district court findings that it found consistent with its prior affirmance of the ITC ruling, the Federal Circuit ruled that:

> Thus, no holding in the prior ITC case or its affirmance by our court precludes our affirmance of the district court here.

*Texas Instruments*, 90 F.3d at 1570.  Thus, Federal Circuit affirmances of ITC rulings are *stare decisis* when the same patent is later litigated between the same parties in a district court, as in the present case.  The Federal Circuit was able to affirm the district court only because its holding was not inconsistent with the Federal Circuit's affirmance of the ITC ruling.  That is not possible here for two related reasons.

First, there is a fundamental difference between affirming a district court's noninfringement holding after affirming an earlier ITC infringement holding, as the Federal Circuit did in *Texas Instruments*, and finding infringement after an earlier Federal Circuit affirmance of an ITC noninfringement holding, as Solomon wants this Court to do.  In the *Texas Instruments* situation, the district court was able to find no infringement even though the Federal Circuit previously affirmed the ITC's infringement holding because the plaintiff failed to present sufficient infringement evidence to the district court, and because that court made findings consistent with the Federal Circuit holding.  By comparison, finding infringement here, after the Federal Circuit affirmed the ITC's noninfringement holding on the same claim, based on the same limitations, inherently requires this Court to ignore the Federal Circuit's prior holding.  Ruling for Solomon here would require this Court to make findings and conclusions fundamentally at odds with the Federal Circuit.

Second, it is possible to find infringement in the ITC, but not in a later court action, as in *Texas Instruments*, because some claim limitations may not have been challenged in the ITC.  The converse is not true.  Affirming a noninfringement holding, as the Federal Circuit did here, means that one or more claim limitations is missing.  Such a ruling is absolutely dispositive in any later action because all limitations must be present or there is no infringement.

Consider this example.  Under a *Texas Instruments* scenario*,* the Federal Circuit affirms an ITC holding that limitations A, B, and C were met, but other required limitations

D, E, and F were not disputed and therefore were not part of the ITC's holding or the Federal

Circuit's *de novo* review (*see Texas Instruments*, 90 F.3d at 1570, "the parties did not litigate

this [claim 14] claim construction issue in the prior proceeding").  Later, in the district court,

the defendant raises a new defense that limitation F was not met, the court finds no

infringement based on such defense, and the Federal Circuit affirms.  The Federal Circuit's

second holding is not inconsistent with its first because it did not consider limitation F the

first time around.  This would be the "thoroughly justified grounds" blessed by *Texas

Instruments*.  In contrast, under a *Solomon* scenario, the Federal Circuit holds on appeal from

the ITC that limitations A, B, and C are MISSING from the accused product.  End of story.

There is no way to raise a "new" issue that will suddenly make those limitations reappear in

the accused product, and there is no way for the district court to find that such limitations

have reappeared without contradicting the Federal Circuit.  Simply put, an affirmance of

infringement may not preclude a later affirmance of noninfringement if a new limitation is

shown to be missing.  But an affirmance of noninfringement **precludes** any later affirmance

of infringement because the Federal Circuit has already determined that there is at least one

missing limitation.  Thus, in a *Solomon* scenario, there can be no "thoroughly justified

grounds."

   Three of the four district court cases decided after *Texas Instruments* on this issue

have given prior Federal Circuit affirmances of ITC determinations near-preclusive effect,

and the fourth reached the same conclusion as the Federal Circuit.[3]

---

[3] Solomon may also cite *PCTEL, Inc. v. Agere Systems, Inc.,* No. C03-02474 MJJ, 2006 WL 734385 (N.D. Cal. March 20, 2006), *American Honda Motor Co., Inc. v. Coast Distribution System, Inc.*, No. C 06-04752 JSW, 2007 WL 672521 (N.D. Cal. Feb. 26, 2007), and *FormFactor, Inc. v. Micronics Japan Co., Ltd.*, No. CV-06-07159JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008), because it has cited them before.  All three of those cases are consistent with *Texas Instruments*, holding that ITC rulings are not binding precedent.  However, none of these cases involved a Federal Circuit affirmance of an ITC ruling, and therefore do not address the *stare decisis* effect of such appellate decisions.

### 2.    The *Thomson* Case

*Thomson Consumer Electronics, Inc. v. Innovatron, S.A.*, 3 F. Supp. 2d 49 (D.D.C. 1998), recognized that only ITC determinations lack any preclusive effect, and stated that a Federal Circuit affirmance of the parallel ITC case would be given near preclusive effect.[4]  In considering *Texas Instruments*, the court stated that:

> Regardless of the final outcome before the ITC, its determination will not **formally** have preclusive effect in the instant action.  However, if there is appellate review of the ITC's claim construction in this dispute, that will certainly have a pronounced effect, and in practical terms the *stare decisis* effect of appellate review of the ITC construction would have **near-preclusive effect** with respect to any review of this Court's construction.

*Id*. at 51 (emphasis added and citation omitted).

### 3.    The *3M* Case

A year later the issue arose in *Minnesota Mining and Mfg. Co., Inc. v. Beautone Specialties Co.*, 117 F. Supp. 2d 72 (D. Mass. 1999), where the court recognized the *stare decisis* effect of the Federal Circuit affirmance of the ITC ruling that Beautone's products did not infringe 3M's patent.  Although the district court stated that under *Texas Instruments*, ITC decisions on patent issues have no issue-preclusion effect in other forums (*id.* at 82), it also observed that:

> *Texas Instruments* also makes clear that this Court cannot simply ignore the Federal Circuit's decision affirming the ITC finding of no infringement in this case.

*Id.* at 83.  The district court then construed 3M's patent claims and analyzed the infringement issue "against the background of these earlier proceedings."  *Id.*  Reaching the same conclusion as the Federal Circuit, the court then granted Beautone's motion for summary

---

[4] In *Thomson,* the ITC case was still pending; the issue arose in a pretrial motion.

judgment on the issue of noninfringement.[5]  *Id.* at 92.

### 4.    The *Fuji Photo Film* Case

In 2001, the New Jersey federal court ruled that under *Texas Instruments,* a Federal Circuit affirmance of an ITC determination was only "persuasive" authority.  *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.,* 173 F. Supp. 2d 268, 274 (D.N.J. 2001).  Apparently, however, the district court was persuaded.  It reached the same conclusion as the Federal Circuit and granted summary judgment for the plaintiff on validity and enforceability.

Nevertheless, by misinterpreting *Texas Instruments, Fuji Photo Film* created a split among the district courts regarding the *stare decisis* effect of *Texas Instruments*.  By granting summary judgment and dismissing this action, this Court can clear the way for the Federal Circuit to resolve this split.

### 5.    The *Alloc* Case

In 2007, the U.S. District Court for the Southern District of New York decided *Alloc, Inc. v. Norman D. Lifton Co.*, No. 03 Civ. 4419 (PAC), 2007 WL 2089303 (S.D.N.Y. July 18, 2007).  The *Alloc* court ruled that *Texas Instruments* means that a Federal Circuit affirmance of an ITC ruling is tantamount to a "command" to the district courts.  *Id.* at *10.

In *Alloc*, the Federal Circuit had already construed, *de novo*, the patent claims on review from the ITC.  Faced with the issue of what effect it should give to the Federal Circuit's decision, the district court analyzed *Texas Instruments, Thomson*, *3M*, and *Fuji Photo Film*.  The court found that *Thomson* gave near-preclusive effect to *Texas Instruments,* that *Fuji Photo Film* gave it no deference but did not deviate from the Court's rulings in the

---

[5] The *3M* court wrongly concluded that *Texas Instruments* holds that Federal Circuit affirmances of ITC rulings have no preclusive effect.  *Texas Instruments*' footnote 9, which the *3M* court cited to support its interpretation (id. at 82), does **not** say that Federal Circuit affirmances of ITC rulings have no issue-preclusive effect.

*Fuji Photo Film* ITC appeal, and that *3M* was somewhere in between.  *Id.*  The court then

concluded as follows:

> Considering Federal Circuit claim construction rulings in ITC appeals merely for
> their persuasive value is inconsistent both with the clear thrust of *Texas Instruments*
> and with the general goals of the patent law.  The mild deference suggested by
> *Minnesota Mining* is similarly inadequate.  Despite a certain lack of clarity, *Texas
> Instruments* strongly suggests that future Federal Circuit panels should not deviate
> from prior rulings except on "thoroughly justified grounds."  **At a minimum**, what
> is a suggestion to future Federal Circuit panels must be understood as a command to
> the district courts.  Given the greater authority and capacity of the Federal Circuit, a
> district court should accord prior rulings **more** deference than would a subsequent
> Circuit panel.

*Id.* at *10 (emphasis on "more" in original).  *Alloc* also addressed Federal Circuit findings:

> . . . Deviation from Federal Circuit findings should therefore be considered only
> under unusually compelling circumstances.

*Id.*  As discussed in Section III.D, *infra*, there are no such compelling circumstances.

The Court then considered studies showing the high reversal rate of district court

claim construction rulings.  According to the court, 34.5% to 44% of such rulings were

reversed during the period after *Markman* hearings began.  *Id.*  From this, the court

concluded that:

> the simple fact of the district courts' susceptibility to errant claim construction
> counsels that they should substitute their own judgment for that previously
> expressed by the Federal Circuit with the greatest trepidation.

*Id.*  The court then held that:

> In sum, the proper interpretation of *Texas Instruments* in the claim construction
> context is that a district court should afford Federal Circuit claim interpretation on
> appeal from the ITC a strong presumption of correctness, and deviate only where the
> party advancing an alternative interpretation provides compelling reasons to do so.

*Id.* at *11.  The court observed that "[s]uch reasons might include evidence or arguments not presented to the Circuit panel."  *Id.*[6]  The *Alloc* court then adopted the Federal Circuit's claim construction.[7]

These cases convey a clear message here: *Solomon v. ITC* is controlling precedent.

### D. Summary Judgment Is Warranted Because the Federal Circuit Held That the Accused Toyota Vehicles Do Not Infringe Claim 7

Toyota describes below the Federal Circuit's findings and conclusions of no infringement by the accused Toyota vehicles, and explains why Solomon's current arguments cannot lead to a different result.  Toyota respectfully submits that the Federal Circuit's rulings on each of the three separate claim limitations discussed below are controlling and must be followed by this Court.  *See Tonkovich v. Kansas Bd. of Regents*, 254 F.3d 941, 944-45 (10th Cir. 2001).  Because these three limitations are present in every asserted claim, infringement cannot be found unless each limitation is satisfied by the accused vehicles.  Thus, to find infringement would require this Court to reject the Federal Circuit's rulings on

---

[6] According to Solomon's filings to date, it has no new evidence and simply wishes to rehash arguments presented to and decided by the ITC and the Federal Circuit.  *See* § III.D, *infra*.  Moreover, for the same reasons there can be no "thoroughly justified grounds," as discussed above with respect to *Texas Instruments* (§ IV.C.1, *supra*), there can be no "compelling reasons" in a *Solomon* scenario.

[7] Solomon is likely to quote *Alloc's* statement that in *Texas Instruments* "the Federal Circuit ruled that ITC decisions **and Federal Circuit decisions** on appeal from the ITC, including claim construction decisions, had no preclusive effect in subsequent actions involving identical patent claims" (*id.* at *9, emphasis added).  The *Alloc* court was wrong with respect to the *Texas Instruments'* court's ruling regarding Federal Circuit affirmances of ITC rulings.  To support that statement, *Alloc* cited page 1569 of the *Texas Instruments* decision.  *Id.*  Neither page 1569, nor any other page of *Texas Instruments*, says that Federal Circuit affirmances of ITC rulings have no preclusive effect, and page 1569 is where the court stated that such affirmances cannot be ignored.  The *Alloc* court's confusion probably stems from the Federal Circuit's statement on page 1569 that "TI also **argues** that by our denying preclusive effect to ITC determinations and to our decisions in appeals from ITC decisions, district courts would be free to ignore our decisions."  *Texas Instruments*, 90 F.3d at 1569.  Texas Instruments may have so argued, but the Federal Circuit did not so hold.  Indeed, it expressly stated that Texas Instruments' argument was wrong.  *Id.*

each of these three separate claim limitations. Accordingly, summary judgment of noninfringement of the asserted claims is clearly warranted.

        **1.        The Federal Circuit Held That the Accused Vehicles Do Not Satisfy the "Power Conversion Means" Limitation**

      The Federal Circuit's ruling on this term is a sufficient, stand-alone basis for summary judgment because all of the asserted claims of the '932 patent require a "power conversion means." (*See* Dkt. 1 at 15-18) This limitation is expressly recited in independent claim 7 (*see* Dkt. 1, '932 patent, col. 11:25) and is incorporated into the dependent claims by reference. Solomon only asserts claims 7, 8, 10, and 12. Because the Federal Circuit found that the accused vehicles do not satisfy this limitation, they cannot possibly infringe *any* of the asserted claims as a matter of law.

        **a)      The Federal Circuit Determined the Proper Construction of the "Power Conversion Means" Limitation**

      At the ITC, the parties agreed that:

> A "power conversion means" is a "means-plus-function" limitation that should be interpreted in accordance with 35 U.S.C. section 112, paragraph 6. The function of the "power conversion means" is "converting said electrical power of said first and second inputs for output."

> There are multiple embodiments that disclose corresponding structure. In the embodiment of Figure 3, the corresponding structure includes portions of the field elements (21), armatures (22) of two electric motors, disk (23), drive gears (24), pinion gear shaft (41), and pinion gears (42). In the embodiment of Figure 4, the corresponding structure includes portions of the field elements (21), armatures (22) of two electric motors, disks (23 and 33), hub/spacer (26), sun gear (46), ring gear (36), and planetary gears (27). In the embodiment of Figure 5, the corresponding structure includes portions of the field elements (21), armatures (22) of two electric motors, disk (23), sun gear extension (46'), sun gear (46), hub (26'), ring gear (36), disk (33), and planetary gears (27). In the embodiment of Figure 6, the corresponding structure includes portions of the field elements (21), armatures (22 and 32) of two electric motors, disks (23 and 33), hub/spacer (26), sun gear (46), ring gear (36), and planetary gears (27). This limitation covers the above structures and equivalents.

*Solomon ITC* at *189-90 (these reference nos. may be seen in Figures 3-6 of the '932 patent, Dkt. 1 at 7-10) On *de novo* review, the Federal Circuit did not disturb the parties' agreed-

upon interpretation of "power conversion means," and therefore implicitly adopted the parties' stipulated meaning and referred to this limitation as "power conversion **means**." That the Federal Circuit did so is clear; it could not affirm Toyota's noninfringement of that limitation without doing so.  *See* 524 F.3d at 1313, 1317-19.

### b)    The Federal Circuit Determined That the Accused Vehicles Do Not Infringe

Special rules apply to determining infringement of a means-plus-function limitation. Specifically, such a limitation is deemed to cover only the structure expressly disclosed in the patent for performing the claimed function, plus structural equivalents thereof.[8]  *Id.; see also Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998).  Thus, the question of infringement turns on whether the accused vehicles have either the exact combination of components recited above (including the "disk" component) or structural equivalents thereof.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333-34 (Fed. Cir. 2006).

In the ITC, Solomon did not argue that the Toyota devices have a "disk" structure. Rather, Solomon argued that the shaft in Toyota's devices is equivalent to the required disk structure.  *Solomon ITC*, 2007 ITC Lexis 377 at *190 ("It is also argued [by Solomon] that respondents' accused transaxles contain[] structure for carrying out the claimed function that is equivalent to the structure disclosed in the '932 patent."), *203-209.  The figures below depict the two structures:

---

[8] Structural equivalence under 35 U.S.C. § 112, ¶ 6 requires that the accused structure and corresponding structure in the patent "perform the identical function in substantially the same way, with substantially the same result."  *Applied Med.*, 448 F.3d at 1333-34.  The "way" and "result" prongs of this analysis are identical to the "way" and "result" prongs of the "function/way/result" test under the doctrine of equivalents.  *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).  Thus, if an accused structure that was known at the time of the invention fails to satisfy either the "way" or "result" prong under 35 U.S.C. § 112, ¶ 6, it also cannot infringe under the doctrine of equivalents as a matter of law.  *Id.*

-13-





Fig. 1 - The "power conversion means" of the claimed invention requires a disk (23).

Fig. 2 - The accused Toyota vehicles utilize rotor shafts—not disks (*See* Toyota's Technology Tutorial and Dkt. 66)

The ITC found that the accused Toyota vehicles do not satisfy the agreed-upon definition of "power conversion means" because the shaft in Toyota's devices is not equivalent to the "disk" structure required by the patent. (*Id.* at *203) The Federal Circuit affirmed, stating that "The administrative law judge found a substantial difference in structure between the Toyota devices and the devices described in the specification of the '932 patent." *Solomon*, 524 F.3d at 1317.

The ITC also estopped Solomon from arguing that a device containing shafts is structurally equivalent to the claimed "power conversion means" under 35 U.S.C. § 112, ¶ 6 because the inventor, Mr. Edwards, disclaimed the use of shafts during prosecution. *Solomon ITC*, 2007 ITC Lexis 377 at *214-217, relying on *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed. Cir. 2001) ("When a patentee advises the examiner . . . that a particular structure is not within his invention, the patentee is not permitted to assert in a subsequent infringement action that the same structure is equivalent to the structure described in the patentee's specification for purposes of section 112 paragraph 6.").

The Federal Circuit affirmed the ITC's finding that the Toyota devices have shafts, not disks or any equivalent thereof. *Solomon*, 524 F.3d at 1317-18 ("We therefore see no error in the administrative law judge's finding that, based on the use of rotor shafts rather

than disks, the Toyota transaxles are not structurally equivalent to the structure disclosed in the specification of the '932 patent."). Solomon's sole argument on appeal with respect to this limitation was that the ALJ "performed an impermissible component-by-component analysis in comparing the accused devices with the structure described in the specification." *Id.* at 1317. Thus, Solomon challenged only the ITC's **infringement** analysis, not its construction of this term. The Court rejected that argument. *Id.* at 1317-18.

The Federal Circuit also found that the patentee disclaimed the use of shafts. *Id.* at 1313 ("The prosecution history **could not be clearer** in showing a disclaimer of devices that use shafts to connect the motor and transmission elements.") (emphasis added). The Federal Circuit concluded its finding that the accused vehicles did not meet this claim limitation as follows:

> Every embodiment of the invention disclosed by the patent shows the disk connecting the armature to a gear element. That configuration allows a direct power transfer from the armature to the gear element in order to generate the rotational mechanical power output of the power conversion means. The prosecution history shows that the patentee relied on that advantage of a disk over a shaft in order to overcome the prior art. We therefore see no error in the administrative law judge's finding that, based on the use of rotor shafts rather than disks, the Toyota transaxles are not structurally equivalent to the structure disclosed in the specification of the '932 patent.

*Solomon*, 524 F.3d at 1317-18.

### c)    Solomon's Current Arguments Are Unavailing

Solomon now argues for the first time that this is not a means-plus-function limitation. Solomon makes this argument despite the parties' previously stipulated meaning, which it acknowledges (Dkt. 58 at 16), the ITC's adoption of such meaning, its failure to contest such meaning on appeal, and the Federal Circuit's implicit adoption of such meaning.

Solomon cannot erase the decisions of the Federal Circuit and the ITC simply because its new counsel wishes to take a different tack. The Federal Circuit has rejected similar strategies before. *Applied Medical*, 448 F.3d at 1332 (on appeal from summary judgment of noninfringement, Court refuses patentee's request to construe means-plus-

function limitation where the district court adopted the patentee's claim construction); *MyMail v. America Online*, 476 F.3d 1372, 1377-78 (Fed. Cir. 2007)  ("Having agreed to that construction before the district court, MyMail 'cannot now argue against that claim construction simply because it resulted in an adverse ruling on summary judgment'") (citation omitted), *citing LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1341 (Fed. Cir. 2005) ("LizardTech agreed to the district court's construction at the time, and it cannot now argue against that claim construction simply because it resulted in an adverse ruling on summary judgment."); *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999) ([W]here, ... the parties agree to a particular construction of the claims which is adopted by the district court, **and neither party disputes that construction on appeal**, this court declines to raise an issue sua sponte which the parties have not presented on appeal." (emphasis added)).  Based on this controlling case law, Solomon has no right to change its position, which was affirmed by the Federal Circuit, and ask this Court to hold that this is not a means-plus-function limitation.

Moreover, the Federal Circuit knows its own law.  Because the applicability of § 112, 6 is a threshold issue, IPLITGUIDE § 14:6.1 (2008), *citing Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 1427 (Fed. Cir. 1997) (the first step in construing this type of claim element is to determine whether the claim is in the "means-plus function" form), and because the Federal Circuit is not bound by parties' agreements on claim construction in its *de novo* review, *Praxair, Inc.,* 543 F.3d at 1323-24 ("Because the court has an independent obligation to construe the terms of a patent, we need not accept the constructions proposed by either party. . . ."), it was the Federal Circuit's province to rule that this is not a means-plus-

function limitation, if it so believed.  But it did not do so.[9]  Instead, the Court confirmed the parties' construction and ruled that Toyota's vehicles do not meet this limitation and therefore do not infringe.  Thus, the parties' previous construction of this term must stand and the Federal Circuit's implicit adoption of such construction and its affirmance of the ITC's noninfingement holding are binding in this action.

Solomon also argues that "the accused products, in fact, infringe even if the 'power conversion means' is treated as a means-plus-function element." (Dkt. 58 at 22)  Presumably, Solomon argues that this limitation covers shafts that are part of the vehicle motor or transmission units, and that the Toyota vehicles meet this limitation.  (See Dkt. 20 at 9)  This argument is irrelevant because, as discussed above, the Federal Circuit held that Solomon claims a disk, not a shaft, and that "based on the use of rotor shafts rather than disks, the Toyota transaxles are not structurally equivalent to the structure disclosed in the specification of the '932 patent."  524 F.3d at 1317-18.  Thus, the Toyota vehicles cannot possibly infringe under the Federal Circuit's construction of this claim limitation.

> ### 2.    The Federal Circuit Held That the Accused Vehicles Do Not Satisfy the "Integral Combination" Limitation
>
> #### a)    The Federal Circuit Determined the Proper Construction of the "Integral Combination" Limitation

The term "integral combination" appears in claim 7 of the '932 patent, and by extension, in dependent claims 8, 10, and 12.  Specifically, claim 7 recites "a respective integral combination of a respective electric motor element and an element of said transmission unit."  This term refers to the direct attachment of the motor element (disk 23)

---

[9] Importantly, the Court **did** adopt a construction of "envelope" that differed from the parties' proposed construction.  This is further evidence that the Court agreed that "power conversion means" is a means-plus-function limitation, as the parties agreed.

to the transmission element (gear 24) in Fig. 3 of the '932 patent.  The Federal Circuit's ruling on this term is a sufficient, stand-alone basis for summary judgment here.

The Federal Circuit, largely following the ITC's construction, adopted the following construction of the term "integral combination:"

> An electric motor element and a transmission unit element rigidly and directly attached without the presence of shafts, [or] bearings ~~or other components~~ between the electric motor element and the transmission unit element~~, supportable by a single bearing~~.

*Solomon*, 524 F.3d at 1313.[10]  The Court emphatically rejected Solomon's argument that the patentee did not disclaim devices with shafts during prosecution of the patent application: "The prosecution history could not be clearer in showing a disclaimer of devices that use shafts to connect the motor and transmission elements." *Id*.  The Court quoted the patentee's own arguments to the U.S. Patent Examiner during prosecution as follows:

> Secondly and more importantly, this prior art does not at all teach or in any way suggest the feature of the present invention as recited in claims 1 and 2 [issued claim 7], or in claim 3/2, of the "integral" combination of each armature and respective gear element. Namely, in this prior art there are shafts and bearings and other elements such as one of the electric motors itself, between each respective pair of these two elements.

*Id*.

Solomon's primary appellate argument against a finding of prosecution disclaimer was that the patentee amended the claims in two ways to capture the "integral combination" feature of the invention.  In claim 1, Solomon argued that the patentee explicitly added a

---

[10] The Federal Circuit noted that "[a] device could be 'supportable' by one bearing even though it is actually supported by more than one bearing." *Id*.  Accordingly, the Federal Circuit did not agree that the patentee disclaimed multiple bearings by describing the invention as being "supportable" by a single bearing.  The ITC also found that the patentee disclaimed coverage of devices having "other components" between the motor and transmission elements.  However, the Federal Circuit did not agree that the phrase "other components" provided a sufficiently clear basis for a finding of prosecution disclaimer as to such other components.  *Id*.

requirement that no shafts or bearings lie between the motor and transmission elements.  In

issued claim 7 (application claim 2), Solomon argued that the patentee added a requirement

that the motor and transmission elements be "at least to a large [extent] within an envelope

containing the other."  Solomon argued that the amendment to issued claim 7 sought to

distinguish over the prior art in a different way from the amendment to claim 1. According to

Solomon, the amendment to claim 7 sought to distinguish prior art structures having free-

standing motors connected to transmission elements located outside the motor.  Based on that

characterization of the prosecution history, Solomon argued that the "no shafts" requirement

of claim 1 should not be included in the construction of the "integral combination" limitation

of claim 7.  *Id*. at 1313-14.   The Court was not persuaded because "the patentee emphasized

the absence of a shaft between the motor and transmission elements."  *Id.* at 1314.

     Solomon also argued to the Federal Circuit that a construction incorporating the

patentee's disclaimer of shafts would exclude the preferred embodiment shown in Figure 5,

which shows a sun gear extension element connected to a rotating disk that is driven by the

invention's motor element.  *Id.* Solomon argued that the sun gear extension is a shaft that

connects the rotating disk carrying the armature elements (the motor elements) to the

planetary gear set (the transmission unit).  *Id*.  The Federal Circuit rejected this argument and

agreed with the ITC that the correct view of the intrinsic record is that, in light of the

patentee's arguments to overcome prior art, the patentee understood the sun gear extension to

be an element of the transmission unit.  *Id.*  Accordingly, the Federal Circuit affirmed the

ITC's finding that devices such as the Toyota transaxles were disclaimed because of their use

of rotor shafts between the motor-generators and the transmission unit.  *Id*.

### b)  The Federal Circuit Determined That the Accused Vehicles Do Not Infringe

     According to the Federal Circuit, Solomon conceded that the accused transaxles do

not infringe under the ITC's construction because "they contain rotor shafts between the

motor-generators and the transmission unit, and because the rotor shafts are not supported by a single bearing." *Solomon*, 524 F.3d at 1313. The Court also concluded that "the presence of the rotor shaft supports the [ALJ's] determination that the accused devices do not have an 'integral combination' of a motor element and a transmission unit." *Id.* at 1314. Thus, because the accused Toyota vehicles do not meet this claim limitation, they cannot be found to infringe.

### c)      Solomon's Current Arguments Invite Legal Error

Solomon now argues that this Court should "revisit" and "clarify" the Federal Circuit's construction of this claim term and find that shafts **can** be part of the claimed "integral combination." (Dkt. 58 at 36-37)  Solomon invites clear legal error under controlling precedent.

Solomon is not entitled to revisit the Federal Circuit's construction of this limitation or its finding of noninfringement, and it would be improper for this Court to do so. *Phonometrics*, 21 Fed. Appx. 910, *unpublished* (quoted with approval in *Phonometrics*, 350 F.3d at 1244).  In *Phonometrics*, after the Federal Circuit construed the claims, the plaintiff filed another suit against another defendant on the same patent.  Affirming the district court's adoption of the Federal Circuit's claim construction, the court addressed the plaintiff's attempt to revisit the established claim construction as follows:

> This contention is simply baffling. . . . [W]e have already addressed and answered the precise question presented in this appeal.  Nor will we entertain new arguments such as alleged inoperability of the invention when the claims are construed as we have construed them, because all such arguments about the meaning of [the construed term] either were or could have been made in the earlier appeals.  Under principles of *stare decisis*, moreover, future panels like the present panel will follow the claim construction set forth by our court in the two decisions cited above and, therefore, **we would not welcome further appeals seeking to re-litigate the meaning of that phrase**.  Indeed, further appeal on that issue would appear to be subject to possible sanctions as frivolously filed under Fed. R. App. P. 38.

*Phonometrics,* 21 Fed. Appx. at 911-912 (emphasis added).

-20-

*AFG Industries*, 375 F.3d 1367, is also instructive.  On remand, the accused infringer

challenged the Federal Circuit's claim construction, arguing that the Court's remand

"invite[d] further refinements in the meaning of the [construed term]."  *Id.* at 1372.  When

the case returned to the Federal Circuit, that Court firmly disagreed:

> [The Federal Circuit's] construction is the law of the case, which "generally bars retrial of issues that were previously resolved." . . . None of the recognized exceptions to the law of the case doctrine—"the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice"—apply in this case.

*Id.*  Thus, because the district court's summary judgment of noninfringement hinged on an

impermissible departure from the Federal Circuit's claim construction, the Court vacated

such summary judgment.  *Id.* at 1373.

Solomon also argues that because the "Federal Circuit plainly understood that shafts,

like the sun gear extension in Figure 5, could be part of the claimed 'integral combination',"

the Court's construction should be "clarified to expressly state that shafts are elements of the

transmission unit or the motor and are not subject to the prosecution disclaimer."  (Dkt. 58 at

36)  But Solomon has it all wrong.  The Federal Circuit never called the sun gear extension a

shaft, and, in fact, found that it is **not** a shaft.  The Court said:

> Solomon argues that the sun gear extension is a shaft that connects the rotating disk carrying the armature elements (the motor elements) to the planetary gear set (the transmission unit).
>
> We agree with the [ALJ] that the better view is that, in light of the patentee's statements to overcome the Roe patent, the patentee understood the sun gear extension to be **an element of the transmission unit**.  We therefore affirm the [ALJ's] finding that devices such as the Toyota transaxles were disclaimed because of their use of rotor shafts between the motor-generators and the transmission unit.

*Solomon*, 524 F.3d at 1314 (emphasis added).

The Federal Circuit's construction of this limitation is *stare decisis* and there is no

basis for this Court to revisit it.  The Federal Circuit concluded that the Toyota devices do not

satisfy this claim limitation under this construction, and therefore Solomon is bound by such holding.  *Id.*

### 3.    The Federal Circuit Held That the Accused Vehicles Do Not Satisfy the "Envelope" Limitation

#### a)    The Federal Circuit Determined the Proper Construction of the Term "Envelope"

The term "envelope" appears in claim 7, and by extension, dependent claims 8, 10, and 12.  As described in Toyota's tutorial (filed May 18, 2009), the objective of the '932 patent is to yield a compact structure.  Claim 7 therefore requires that "each of said integral combination involving one of said two respective elements thereof being at least to a large extent within an envelope containing the other."  "Envelope" refers to the imaginary space within the sweep of the armatures (22) of the motor elements in Fig. 3.  The Federal Circuit's ruling on this term is a sufficient, stand-alone basis for summary judgment here.

The Federal Circuit largely adopted the ITC's construction of this term but noted that "the [ALJ] should have omitted the words 'so that the power is taken off from inside the armature itself'," resulting in the following construction:

> one of the integral combination elements is contained entirely or nearly entirely within the imaginary space defined by the rotation of the other integral combination element ~~so that power is taken off from inside the armature itself~~.

*Solomon*, 524 F.3d at 1317.

The Court also expressly rejected Solomon's argument that "envelope" requires only a "close geometrical overlap."  Recognizing that Solomon's "main contention on this issue is that the [ALJ's] construction would exclude the preferred embodiment displayed in Figure 6," 524 F.3d at 1315, the Court held that:

> Solomon's competing construction—that the "envelope" requires a "close geometrical overlap" among the components—provides little meaningful guidance for determining the boundaries of the claimed "envelope."  The ALJ therefore did not err in rejecting Solomon's construction.

*Id.* at 1317.  In support, the Federal circuit observed that:

> Figure 6 shows the combination motor and transmission device with heavy cylindrical peripheral masses (28 and 38) acting as flywheels. The transmission elements in Figure 6 are the ring gear (36) and the planetary gear hub (26). Neither of those elements would lie within the sweep of the armature elements (22) because Figure 6 shows the armature elements fixed to the side of the rotating disk rather than on the outer perimeter.

*Id.* at 1316.

The Court then addressed the parties' dispute over whether the patentee was referring to Figure 6 when he stated during prosecution that "the respective gear element of each respective 'integral combination' is approximately within envelope [sic] of the respective electrical motor element, as is seen for each illustrated embodiment." *Id.* at 1316. The Court held that even if the patentee intended to refer to Figure 6, the Court's construction does not necessarily exclude the Figure 6 embodiment. Rather, the Court reasoned that the flywheel masses (28 and 38) could be "considered to be the motor elements that define the envelope, so that the transmission elements (26 and 36) lie to a large extent within imaginary space defined by the rotation of each flywheel mass." *Id.* Importantly, the Court also observed that the specification's description of Figure 6 characterizes the flywheel masses as components of such inputs, along with the other motor elements. *Id.* at 1316-17.

### b) The Federal Circuit Determined That the Accused Vehicles Do Not Infringe

Although, as noted above, the Court differed from the ALJ on one point regarding the meaning of this term, the Court found this claim limitation was not satisfied, stating that "that aspect of the construction does not affect our conclusion as to noninfringement because Toyota has shown that its devices have transmission gears outside the imaginary space defined by the motors' magnet assemblies." *Id.* The Court therefore concluded that it need not find that the ALJ erred in his construction in any respect that affects the issue of infringement. *Id.*

### c)  Solomon's Current Arguments Are Meritless

Solomon admits that the "Federal Circuit affirmed the ALJ's construction of 'envelope'," but now argues that it based its ruling on a *sua sponte* rationale that was contrary to the arguments of both parties and inconsistent with Figure 6.  Solomon also argues that the Federal Circuit's construction is "fatally flawed because it fails to cover the Figure 6 embodiment," Dkt. 58 at 50, and that this Court should second-guess the Federal Circuit's controlling construction of this limitation because Solomon allegedly had "no opportunity" to challenge the Federal Circuit's ruling.

Solomon's "no opportunity" argument is legally wrong.  Solomon could have moved for reconsideration or petitioned the Supreme Court for *certiorari*, but chose not to do so. Instead, Solomon asks this Court to second-guess the appellate court that has already ruled on this very issue and will review it again in any later appeal.

Moreover, Solomon's "*sua sponte*" argument is based on an erroneous view of the scope of the Federal Circuit's *de novo* review of claim construction rulings.  The fact that the Court stated a rationale for its construction for the first time on appeal is immaterial.  The Federal Circuit conducts a *de novo* review of claim construction issues and is entitled to adopt any construction it sees fit on appeal.  Moreover, the Court is not bound to adopt either party's proposed construction.  In fact, trial courts and the Federal Circuit must not do so if the parties' proposed constructions are legally flawed.  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323-24 (Fed. Cir. 2008) ("Because the court has an independent obligation to construe the terms of a patent, we need not accept the constructions proposed by either party"); *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) (neither party advocated the proper construction; "The duty of the trial judge is to determine the meaning of the claims . . . . In the exercise of that duty, the trial judge has an independent obligation to determine the meaning of the claims, notwithstanding the views asserted by the

adversary parties." (citation omitted)); *Colida v. Ericsson, Inc.*, 93 Fed. Appx. 220, 223 (Fed. Cir. 2004) ("[c]laim construction is an issue of law reviewed *de novo;*" threatening sanctions if the parties challenge claims construed for the first time on appeal). In this case, the Federal Circuit reached the correct construction based on sound reasoning, albeit different reasoning than either party proposed.

Finally, the Federal Circuit also expressly addressed and rejected Solomon's "Figure 6" argument. 524 F.3d at 1316.

Thus, the Federal Circuit's construction of this limitation is *stare decisis* in this action, and is fully consistent with the ordinary meaning of "envelope" and the embodiment of Figure 6. The Federal Circuit held that Toyota's products do not meet this limitation and therefore do not infringe. This Court is bound by that Court's construction of this limitation and its noninfringement holding.

## V.    CONCLUSION

As explained above, the Federal Circuit has construed the claims of the '932 patent and expressly held that, for at least three independent reasons discussed above, Toyota does not infringe the '932 patent. For this Court to find infringement, it would need to ignore the judgment and reasoning of the Federal Circuit on all three claim limitations. As stated in *Texas Instruments* and various other cases, this Court should refuse Solomon's invitation to deviate from reasoned and controlling precedent of the Federal Circuit. Accordingly, Toyota respectfully urges this Court to apply the claim constructions mandated by the Federal Circuit, and grant summary judgment that Toyota does not infringe any asserted claim of the '932 patent.

July 17, 2008                                    Respectfully submitted,

                                                */s/ Michael V. O'Shaughnessy_____*
                                                Thomas W. Winland
                                                John F. Hornick

James R. Barney
Michael V. O'Shaughnessy
Hayley S. Weimer
Finnegan, Henderson, Farabow,
  Garrett & Dunner, LLP
901 New York Ave., NW
Washington, DC 20001
Phone: (202) 408-4456
Fax: (202) 408-4400

William C. Guerrant, Jr.
Florida Bar No. 516058
wguerrant@hwhlaw.com
Trial Counsel
HILL, WARD & HENDERSON, P.A.
Suite 3700 – Bank of America Building
101 East Kennedy Boulevard
Post Office Box 2231
Tampa, Florida 33601
Telephone: (813) 221-3900
Facsimile: (813) 221-2900

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 17, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Katherine C. Conlon, Fowler, White, Bogs, Banker, P.A., 501 East Kennedy Boulevard, Suite 1700, Tampa, Florida 33602.

*/s/Michael V. O'Shaughnessy*

Attorney