**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

----------------------------------------------------------------------- x
                                                    :

SOLOMON TECHNOLOGIES, INC.,         :

                                                   :

                           Plaintiff,      :

                                                   : Case No. 8:05-cv-01702-JDW-MAP

                      v.                :

                                                   :

TOYOTA MOTOR CORPORATION,      :
TOYOTA MOTOR MANUFACTURING    :
NORTH AMERICA, and TOYOTA MOTOR  :
SALES, U.S.A., INC.,              :

                                                   :

                           Defendants.    :

                                                   :
----------------------------------------------------------------------- x

**SOLOMON'S OPPOSITION TO TOYOTA'S MOTION**
**FOR SUMMARY JUDGMENT OF NONINFRINGEMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  Introduction ..................................................................................................................1

II.  Toyota's "Stare Decisis" Argument is Wrong as a Matter of Law,
and Irrelevant to the Outcome of its Motion .....................................................3

    A.  Toyota has Misinterpreted *Texas Instruments*—This Court is Not Bound by
the Federal Circuit's Prior *Solomon* Decision ............................................3

    B.  None of the Cases Cited by Toyota Support its Interpretation of *Texas
Instruments*—To the Contrary, they Support Solomon's Position .........................5

    C.  Under *Texas Instruments*, Solomon is Entitled to Raise New Issues in this
Action—Not Previously Raised before the ITC or Federal Circuit—and this
Court Must Consider those Issues..........................................................7

    D.  There is No *Stare Decisis* Effect Regarding the Factual
Findings by the ITC .................................................................8

III.  If the Court Agrees with Solomon that the "Power Conversion Means"
Limitation is NOT a Means-Plus-Function Limitation, Then the Federal
Circuit Decision Regarding that Limitation is Inapplicable Here ......................................8

    A.  The "Power Conversion Means" Limitation Should Not Be Construed
as a Means-Plus-Function Limitation ....................................................9

    B.  Solomon Has the Right to Have This Court Determine Whether the
"Power Conversion Means" Limitation is a Means-Plus-Function
Limitation.........................................................................11

IV.  There are Fact Issues, Precluding Summary Judgment, Even Under the
Federal Circuit's Prior Claim Construction .....................................................12

    A.  Issues of Fact Pertaining to the "Power Conversion Means" Limitation ..............12

    B.  Issues of Fact Pertaining to the "Integral Combination" Limitation ....................15

    C.  Issues of Fact Pertaining to the "Envelope" Limitation.........................................16

V.  This Court Must Independently Consider Solomon's Arguments Regarding
Why there are Compelling Reasons to Modify or Clarify the Federal
Circuit's Claim Construction ............................................................17

- i -

VI.     Solomon Requires Additional Discovery Under Rule 56(f)..............................................18

VII.    Conclusion .......................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alloc, Inc. v. Norman D. Lifton Co.*,
No. 03 Civ. 4419 (PAC), 2007 WL 2089303 (S.D.N.Y. Jul. 18, 2007) ...........................4, 5, 6

*Alloc, Inc. v. Pergo, LLC*,
No. 00-C-999, 2009 WL 1939034 (E.D.Wis. Jul 02, 2009) .....................................................5

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .............................................................................................................18

*Applied Med. Res. Corp. v. U.S. Surg. Corp.*,
448 F.3d 1324 (Fed. Cir. 2006) ............................................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .............................................................................................................18

*Cole v. Kimberly-Clark Corp.*,
102 F.3d 524 (Fed. Cir. 1996) ..........................................................................................9, 10

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
559 F.3d 1308 (Fed. Cir. 2009) ............................................................................................12

*Envirco Corp. v. Clestra Cleanroom, Inc.*,
209 F.3d 1360 (Fed. Cir. 2000) ........................................................................................9, 10

*Finnigan Corp. v. ITC*,
180 F.3d 1354 (Fed. Cir. 1999) ............................................................................................11

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
173 F. Supp. 2d 268 (D.N.J. 2001) ................................................................................4, 6, 8

*IMS TECH. Inc. v. Haas Automation, Inc.*,
206 F.3d 1422 (Fed. Cir. 2000)........................................................................................13, 15

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
424 F.3d 1336 (Fed. Cir. 2005) ............................................................................................12

*3M v. Beautone Specialties Co.*,
117 F. Supp. 2d 72 (D. Mass. 1999) ................................................................................4, 5, 8

*MyMail* v. *Am. Online*,
476 F.3d 1372 (Fed. Cir. 2007) ............................................................................................12

*Newell Cos Inc. v. Kenny Mfg., Co.*,
    864 F.2d 757 (Fed. Cir. 1988)................................................................................................7

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997)............................................................................................12

*Seal-Flex, Inc. v. Athletic Track and Court Const.*,
    172 F.3d 836 (Fed. Cir. 1999)..............................................................................................12

*Solomon Techs.s, Inc. v. Int'l Trade Comm'n*,
    524 F.3d 1310 (Fed. Cir. 2008)..................................................................................... *passim*

*Stout v. St. Amour's Lawn Care, LLC*, No. 6:07-cv-1882,
    2008 WL 816818, at *2 (M.D. Fla. 2008) ..........................................................................18

*Texas Instruments, Inc. v. Cypress Semiconductor, Inc.*,
    90 F.3d 1558 (Fed. Cir. 1996)...................................................................................... *passim*

*Thomson Consumer Elecs., Inc. v. Innovatron, S.A.*,
    3 F. Supp. 2d 49 (D.D.C. 1998) ............................................................................................6

*TriMed, Inc. v. Stryker Corp.*,
    514 F.3d 1256 (Fed. Cir. 2008).....................................................................................9, 10


STATUTES

35 U.S.C. § 112, ¶ 6.......................................................................................................... *passim*


OTHER AUTHORITIES

Fed. R. Civ. P. 56(f) ........................................................................................................3, 18

## I.     <u>Introduction</u>

Toyota frames its summary judgment motion in terms of two straightforward legal questions: "(1)  Are the Federal Circuit's findings and conclusions in *Solomon Technologies, Inc. v. Int'l Trade Comm'n*, 524 F.3d 1310 (Fed. Cir. 2008), binding on this Court?" and "(2)  If so, what did the Federal Circuit hold?"     (Toyota's Motion for Summary Judgment of Noninfringement ("Toyota's Brief"), p. 1).   Toyota then argues that the answer to the first question is yes and that, therefore, "this Court need do nothing more than follow the Federal Circuit and grant summary judgment of noninfringement." (*Id.*).  ***Significantly, Toyota does not assert that it is entitled to summary judgment if the answer to the first question is no.*** Accordingly, Solomon submits that if the Court agrees with Solomon that the answer to the first question is "***no***," then the Court must deny Toyota's motion.

Notably, Toyota argues that this Court, in deciding the present motion, need not (i) "construe the claim limitations of . . . the '932 patent," or (ii) "apply [the claim limitations] to the accused vehicles."  Indeed, Toyota asserts that "***it would be improper [for this Court] to do so***." (*Id.*).   Accordingly, Toyota's motion does not call for any claim construction or infringement analysis at this time.[1]

Toyota's first question actually includes an inquiry into not only whether this Court is bound by the Federal Circuit's *legal* determinations in *Solomon v. Int'l Trade Comm'n*, but also whether this Court is bound by the ***factual determinations*** of the Internal Trade Commission ("ITC"), which the Federal Circuit relied on in reaching its decision.   The answer to both questions, under well-settled caselaw, is clearly no.

Section II, below, explains why this the Court cannot simply adopt the Federal Circuit's decision, as Toyota argues, but rather, must ***independently evaluate the claim construction and other issues before it***.  Significantly, no court has ever adopted Toyota's interpretation of *Texas*

---

[1]     Solomon requests the opportunity to submit separate briefing and argument regarding claim construction (including a detailed analysis of the patent, file history and other evidence that accompanies claim construction) at an appropriate time under a schedule to be determined by the Court.

*Instruments*, the case upon which Toyota relies.  In fact, every single case that has addressed *Texas Instruments* is directly contrary to Toyota's position.

Section III explains why this Court cannot simply adopt the Federal Circuit's decision with respect to the "power conversion means" limitation, as this Court must first rule, in connection with claim construction proceedings, whether that limitation is, in fact, a means-plus-function limitation under 35 U.S.C. § 112, ¶ 6.  That issue was not raised during the ITC proceedings or previously considered by the Federal Circuit.  In particular, in reaching its decision, the Federal Circuit treated—without considering the issue—the limitation as a means-plus-function limitation.  If the Court agrees with Solomon that this assumption is incorrect, *i.e.*, the limitation is *not* a means-plus-function limitation, then the Federal Circuit's decision regarding that limitation is no longer applicable.

Section IV describes numerous issues of material fact that preclude summary judgment even under the Federal Circuit's prior claim construction.  Those factual issues include:

    i.          whether the structure in Toyota's accused vehicles that corresponds to the "disk" in the '932 patent is solely the rotor shaft, as opposed to the entire rotor assembly;

    ii.        whether the rotor assemblies in Toyota's accused vehicles are disk-like;

    iii.      whether the "rotor shaft" in Toyota's vehicles is part of the motor;

    iv.      whether the element of the accused vehicles that corresponds to the "motor element" in the claimed "integral combination" is the rotor assembly, rather than the rotor shaft (a subcomponent of the rotor assembly); and

    v.       whether Toyota's accused vehicles meet the "envelope" limitation when the sweep of other elements in Toyota's motors is considered, not just the sweep of the magnets.

In support of the above factual issues, Solomon has submitted with this opposition sworn declarations from (1) Professor Ali Emadi, a pre-eminent expert in the field of hybrid vehicles, (2) Jonathan Rollins Edwards, the inventor of the patent-in-suit, and (3) Robert Alexander

Pesiridis, the Chief Engineer of Solomon.  Since all factual inferences must be decided in Solomon's favor on Toyota's motion for summary judgment, Toyota's motion must be denied.

Section V explains why Solomon believes there are compelling reasons to modify or clarify the Federal Circuit's prior claim construction in claim construction proceedings before this Court.

Finally, Section VI explains why Solomon requires additional discovery relating to Toyota's infringement and that, under Fed. R. Civ. P. 56(f), this Court cannot decide Toyota's motion until Solomon has had the opportunity to obtain such discovery.

## II.     Toyota's "*Stare Decisis*" Argument is Wrong as a Matter of Law, and Irrelevant to the Outcome of its Motion

Toyota argues that, under *Texas Instruments*, "Federal Circuit affirmances of ITC rulings are stare decisis when the same patent is later litigated between the same parties in a district court, as in the present case."  (Toyota's Brief, p. 6).  Toyota is ***wrong as a matter of law***.  In addition, Toyota's argument is irrelevant to the outcome of Toyota's motion since there remain disputed issues of material fact, precluding summary judgment, even if this Court were to adopt the Federal Circuit's claim construction.

### A.     Toyota has Misinterpreted *Texas Instruments*—This Court is Not Bound by the Federal Circuit's Prior *Solomon* Decision

Contrary to Toyota's assertion, *Texas Instruments* and each and every one of the district court cases cited by Toyota hold that this Court is ***not*** bound by a Federal Circuit's decisions in a related ITC appeal (including decisions relating to claim construction and infringement).  This Court ***must*** independently consider those issues—exactly the opposite of what Toyota urges.

Indeed, in *Texas Instruments*, the Federal Circuit affirmed a finding of ***non-infringement*** on appeal from a district court action, despite the fact that it had previously affirmed a finding of ***infringement*** on appeal from an earlier ITC proceeding addressing the exact same infringement issue between the same parties.  *See Texas Instruments, Inc. v. Cypress Semiconductor, Inc.*, 90 F.3d 1558, 1568-70 (Fed. Cir. 1996).  ***That result would have been impossible if the district***

*court in the Texas Instruments case did what Toyota urges this Court to do—namely, treat the Federal Circuit's prior determination of infringement in the related ITC appeal as stare decisis without itself independently considering the issue of infringement.*  It is, thus, crystal clear from the *Texas Instruments* case that the Federal Circuit did not believe that the ITC's ruling on infringement or its own affirmance of that ruling subsequently bound the district court on the question of infringement.[2]

Significantly, not a single court has interpreted *Texas Instruments* as Toyota does, in particular, as standing for the proposition that the Federal Circuit's affirmance of an ITC decision has a *stare decisis* effect on a subsequent district court action.  To the contrary, courts interpreting *Texas Instruments* have uniformly held that ITC rulings on patent issues (**including those relating to claim construction**) and the Federal Circuit's affirmance of those rulings have **no preclusive effect** on district courts.  *See, e.g., Alloc, Inc. v. Norman D. Lifton Co.*, No. 03 Civ. 4419(PAC), 2007 WL 2089303, at *9 (S.D.N.Y. July 18, 2007) (explaining that in *Texas Instruments* "the Federal Circuit ruled that ITC decisions and Federal Circuit decisions on appeal from the ITC, **including claim construction decisions**, had no preclusive effect in subsequent actions involving identical patent claims.") (all emphasis added unless otherwise noted); *see also 3M v. Beautone Specialties Co.*, 117 F. Supp. 2d 72, 83 (D. Mass. 1999) ("the Commission's determination **and subsequent affirmance by the Federal Circuit** do not have collateral estoppel effect [on district courts]").  As explained by the court in *Fuji Photo Film Co. v. Jazz Photo Corp.*:

---

[2] Toyota asserts that a different rule should apply when considering the *stare decisis* effect of the Federal Circuit's affirmance of an ITC's ruling of **infringement** versus the Federal Circuit's affirmance of an ITC's ruling of **no infringement**. (Toyota's Brief at 6).  In the latter case, Toyota asserts that there must be a *stare decisis* effect.  However, that same argument has already been rejected in the *3M* case.  *See 3M v. Beautone Specialties Co.*, 117 F. Supp. 2d 72, 82-83 (D. Mass. 1999) (stating that *Texas Instruments* "forecloses giving collateral estoppel effect either to the ITC finding of **no infringement or to the Federal Circuit's decision affirming that determination in this case**" and rejecting the defendants argument to the contrary).  As the *3M* court explained, *Texas Instruments*, makes "no distinction" between those two situations.  Moreover, contrary to Toyota's assertion (at Toyota's Brief, pp. 7 and 11 n.6) as explained herein, there are factual and legal issues in dispute here that the Federal Circuit never considered, which preclude summary judgment.

> In analyzing the prior decisions in this matter this Court is mindful of the findings and opinions rendered by the ALJ and ITC, as well as the opinion rendered by the Federal Circuit on appeal from the ITC.  However, while such findings and opinions serve a persuasive value, they do not receive any deferential treatment nor do they have a preclusive effect on any findings and opinions rendered by this Court . . . This Court therefore renders its opinion based on an ***independent review of the facts and law***.

(173 F. Supp. 2d 268, 274 (D.N.J. 2001)).   Accordingly, Toyota's assertion that the Federal Circuit's affirmance of an ITC decision has a *stare decisis* effect on a subsequent district court action is simply wrong.

While courts interpreting *Texas Instruments* have given various degrees of persuasive value to the Federal Circuit's affirmance of ITC rulings (*see Norman D. Lifton,* 2007 WL 2089303, at *9 (surveying cases)), each of them recognized that it was required to do its own independent review of the factual and legal issues before it.  In particular, in every single case that addressed the merits, the district court engaged in its own detailed claim construction analysis and infringement analysis.  *See, e.g.*, *3M,* 117 F. Supp. 2d at 83; *Alloc, Inc. v. Pergo, LLC*, No. 00-C-999, 2009 WL 1939034, at *13 (E.D. Wis. July 2, 2009); *Norman D. Lifton*, 2007 WL 2089303, at *15.  Significantly, none of the cases cited by Toyota involve a situation where the district court simply adopted the Federal Circuit's decision from a prior ITC appeal, as Toyota would have this Court do.  Plainly, the answer to Toyota's question—are the Federal Circuit's findings and conclusions binding on this Court—is ***no***.

**B.     None of the Cases Cited by Toyota Support its Interpretation of *Texas Instruments*—To the Contrary, they Support Solomon's Position**

Toyota cites *3M* for the proposition that *Texas Instruments* "makes clear that this Court cannot simply ignore the Federal Circuit's decision affirming the ITC finding of no infringement . . . ." (Toyota's Brief at 5).  But in that case, the court actually concluded that *Texas Instruments* "remains good law and ***forecloses giving collateral estoppel*** effect either to the ITC finding of no infringement ***or to the Federal Circuit's decision affirming that determination*** in this case." *3M*, 117 F. Supp. 2d at 82.

- 5 -

Toyota also cites *Alloc, Inc. v. Norman D. Lifton Co*. for the proposition that "*Texas Instruments* means that a Federal Circuit affirmance of an ITC ruling is tantamount to a 'command' to the district courts." (Toyota's Brief, p. 9). But as Toyota acknowledges, that case stated that in *Texas Instruments*, "the Federal Circuit ruled that ITC decisions and Federal Circuit decisions on appeal from the ITC, including claim construction decisions, had **no preclusive effect** in subsequent actions involving identical patent claims." (Toyota's Brief, p. 11, n. 7). Thus, *Alloc, Inc. v. Norman D. Lifton Co*., supports Solomon's position, not Toyota's. While Toyota attempts to explain away the *Alloc* decision as "wrong with respect to the *Texas Instruments*' court's ruling regarding Federal Circuit affirmances of ITC rulings," the *Alloc* decision is consistent with every other case that has addressed the issue.

Toyota further cites *Thomson Consumer Elecs., Inc. v. Innovatron, S.A*. for the proposition that a Federal Circuit's affirmance of an ITC's ruling would be given "***near*** preclusive effect."[3] (Toyota's Brief, p. 7). The *Thomson* court's statement was perhaps at one extreme of the degree of deference given to such prior rulings with *Fuji Photo* on the opposite extreme, which stated that such rulings do not receive "***any*** deferential treatment." *Fuji Photo*, 173 F. Supp. 2d at 274. In any event, a "near preclusive effect" is again plainly not the same thing as *stare decisis*. Significantly, *Thomson* acknowledged that "[r]egardless of the final outcome before the ITC, its determination **will not formally have preclusive effect** in the instant action." *Thomson*, 3 F. Supp. 2d at 51.

Finally, Toyota asserts that *Fuji Photo Film Co. v. Jazz Photo Corp*. "created a split among the district courts regarding the *stare decisis* effect of *Texas Instruments*" and that this Court should grant summary judgment to "clear the way for the Federal Circuit to resolve the split." (Toyota's Brief at 9). As explained above, however, not a single case supports Toyota's *stare decisis* argument. If there is any split, it is only with respect to the degree of persuasive

---

[3]  *Thomson*'s brief discussion of *Texas Instruments* was clearly dicta, since no parallel ITC decision or appellate review of that decision had yet occurred.

value a court should give such prior findings and opinions—not whether the court is bound by those findings and opinions, which it is clearly not.

Toyota's suggestion that this Court grant summary judgment so that the Federal Circuit can resolve this supposed split in authority invites reversible error.  (Toyota's Brief at 9).  The most expeditious way to handle this matter is simply to proceed in the same manner that *every other* district court has done following ITC proceedings—namely, to independently consider and decide the issues before it.[4]

### C.    Under *Texas Instruments*, Solomon is Entitled to Raise New Issues in this Action—Not Previously Raised before the ITC or Federal Circuit—and this Court Must Consider those Issues

Another reason that Toyota's *stare decisis* argument is flawed is that *Texas Instruments* expressly permits a party to make whatever arguments in the district court it deems justified—which includes arguments not made in prior ITC proceedings.  As the Federal Circuit explained,

> [T]he rule that decisions of the ITC involving patent issues have no preclusive effect in other forums has not changed . . . once we accept, as we have done at least since 1986, that *ITC decisions are not binding on district courts in subsequent cases brought before them, it necessarily follows that accused infringers can raise whatever defenses they believe are justified regardless whether they previously raised them and lost in the ITC*.

(*Texas Instruments*, 90 F.3d at 1569).  Plainly, there can be no *stare decisis* effect if the Federal Circuit and ITC never even ruled on an issue.

As explained in Section III below, one such issue that Solomon raises here is whether the "power conversion means" limitation is a means-plus-function limitation under 35 U.S.C. § 112,

---

[4]  Toyota also cites *Newell Cos Inc. v. Kenny Mfg., Co.* for the proposition that the Federal Circuit "has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*."  (Toyota's Brief, p. 5).  But under *Texas Instruments*, that rule plainly does not apply to a district court action relating to the subject matter of a prior ITC appeal.  *See Texas Instruments*, 864 F.2d at 1569 (stating that "Congress did not intend decisions of the ITC on patent issues to have preclusive effect" and that "[r]ecent changes to ITC procedures and the formation of this court [the Federal Circuit] as the exclusive appellate court for patent cases, including ITC determinations, do not compel a different rule.").

¶ 6.  The Federal Circuit and ITC never considered that issue and, therefore, there can plainly be no *stare decisis* pertaining to it.

> **D.      There is No *Stare Decisis* Effect Regarding the Factual Findings by the ITC**

Toyota asserts that "[t]o the extent that the Federal Circuit made factual findings in *Solomon*, they are not now subject to dispute by the parties."  (Toyota's Brief at 1).  But the Federal Circuit did not itself make **any** factual findings—it instead adopted the ITC's factual findings.  Solomon did not appeal those factual findings, though many were subject to dispute before the ITC.  Instead, Solomon focused its appeal on legal errors in, for example, claim construction that would have rendered those factual findings irrelevant if Solomon had prevailed.

Under well-settled precedent, factual findings by the ITC are not binding precedent and are not entitled to a *stare decisis* effect.  *See, e.g., Fuji Photo Film Co.*, 173 F. Supp. 2d at 274 n. 2 ("Nor is the analysis in *Texas Instruments* limited to legal findings.  Consequently, this Court . . . affords both the ***factual and legal findings*** of the ITC and the appeal thereof ***persuasive*** value only."); *see also 3M,* 117 F. Supp. 2d at 88-90 (the court independently assessing infringement).  Toyota asserts, however, that Solomon was required to challenge the ITC's factual findings in its appeal, or waive its right to do so in this action.  Toyota cites no authority whatsoever for such a result and such a result simply makes no sense.  Under Toyota's theory, a party could only appeal an ITC decision at its peril, because any issue not raised in the appeal would be considered waived and admitted for purposes of any future district court proceeding.

As described in Section IV below, there are also numerous fact issues precluding summary judgment.  Toyota's *stare decisis* argument quite simply does not apply at all to those issues, making Toyota's motion futile.

**III.    If the Court Agrees with Solomon that the "Power Conversion Means" Limitation is NOT a Means-Plus-Function Limitation, Then the Federal Circuit Decision Regarding that Limitation is Inapplicable Here**

The ITC and Federal Circuit determined that Toyota's accused vehicles were missing the "power conversion means" limitation on the sole basis of construing it as a means-plus-function

limitation under 35 U.S.C. § 112, ¶ 6.  They did so because Solomon's previous counsel never raised the issue of whether 35 U.S.C. § 112, ¶ 6 was applicable—but, instead, relied upon the *presumption* that terms expressed as a "means for" performing a specified function, such as the "power conversion means" limitation, are construed under § 112, ¶ 6.  That presumption, however, is subject to an important exception, which, as explained below, is indisputably applicable here.  Under *Texas Instruments*, the Court must consider Solomon's argument that that exception applies.  If the Court agrees that it does, then the Federal Circuit's decision regarding the "power conversion means" is no longer applicable.

A.   **The "Power Conversion Means" Limitation Should Not Be Construed as a Means-Plus-Function Limitation**

Under 35 U.S.C. § 112, ¶ 6, "[a]n element in a claim for a combination may be expressed as a *means* or step for performing a *specified function* ***without the recital of structure***, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  The Federal Circuit has explained that "[i]f a claim element contains the word 'means' and recites a function," there is ***a presumption*** that the "element is a means-plus-function element under 35 U.S.C. § 112, ¶ 6." *See Envirco Corp. v. Clestra Cleanroom, Inc.*, 209 F.3d 1360, 1364 (Fed. Cir. 2000).  However, that presumption "***falls . . . if the claim itself recites sufficient structure to perform the claimed function.***" *Envirco*, 209 F.3d at 1364; *see also Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) (in order to invoke 35 U.S.C. § 112, ¶ 6, "the alleged means-plus-function claim element must not recite a definite structure which performs the described function."); *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008) ("If, in addition to the word 'means' and the functional language, the claim recites sufficient structure for performing the described functions in their entirety, the presumption of § 112, ¶ 6 is overcome-the limitation is not a means-plus-function limitation.").  Accordingly, if a claim element recites sufficient structure, then notwithstanding the use of the word "means," that element is not a means-plus-function element and "is not limited to the structure corresponding to the claimed function as 'described

- 9 -

in the specification and equivalents thereof.'"  *Envirco*, 209 F.3d at 1365.  Rather, the court must construe the claim element using "standard claim construction rules."  *Id.*

As such, the Federal Circuit has, on numerous occasions, construed claim terms containing the word "means" to *not* be means-plus-function elements where the claim recites sufficient structure for performing the claimed function.  *See, e.g., Cole,* 102 F.3d at 531 ("perforation *means* … for tearing" was not a means-plus-function element because the claim not only "describes the structure supporting the tearing function (*i.e.*, perforations)," but also "its location (extending from the leg band to the waist band) and extent (extending through the outer impermeable layer)."); *see also TriMed*, 514 F.3d at 1259, 1260 (the term "said *holes* in said plate providing *means* for allowing the pin to slide axially therein but preventing compression across the fracture, and stabilizing said near end of the pin against displacement in the plane of the plate" does not come within the scope of § 112, ¶ 6, because "the claim articulates the structure for performing the claimed functions-the *holes*.") (emphasis added).

Here, claim 7 of the '932 patent plainly recites sufficient structure for the "power conversion means" to take it outside the scope of § 112, ¶ 6.  Indeed, the vast majority of claim 7 recites the structure of the "power conversion means."  In particular, claim 7 specifies that the "*power conversion means*" includes a "*mechanical power transmission unit*," which in turn has "*two inputs*" and "*an output*."  It further specifies that the "power conversion means" includes two "respective *integral combination[s] of a respective electric motor element* and *an element of [the mechanical power] transmission unit*."  The "mechanical power transmission unit," "electric motor element[s]," "inputs" and "output" of the transmission unit, and the "integral combination[s]" are all structural elements of the "power conversion means."

Further, the structural relationship of those elements are specified in the claim—in particular, that each *integral combination* involves *one of said two respective elements thereof being at least to a large extent within an envelope containing the other*," that each integral combination has "*a compact structure*," and that the two integral combinations are *located closely adjacent each other*."

Plainly, the "power conversion means" limitation does not recite a means for performing a specified function "*without the recital of structure*," as is required for a claim element to be a means-plus-function element under 35 U.S.C. § 112, ¶ 6.  (*See* Declaration of Professor Ali Emadi ("Emadi Decl."), ¶¶ 11-18; Declaration of Jonathan Rollin Edwards ("Edwards Decl."), ¶¶ 6- 7; Declaration of Robert Alexander Pesiridis ("Pesiridis Decl."), ¶¶ 5-6 – all declarations are concurrently filed herewith).  In addition, the recited structure is sufficient to perform the specified function.  (*Id.*).  Accordingly, the "power conversion means" element should not be construed as a means-plus-function element under 35 U.S.C. § 112, ¶ 6.

**B.      Solomon Has the Right to Have This Court Determine Whether the "Power Conversion Means" Limitation is a Means-Plus-Function Limitation**

Toyota argues that Solomon cannot have this Court consider whether or not the "power conversion means" is a means-plus-function element because Solomon's prior counsel did not challenge the presumption that it was such an element during the earlier ITC proceedings.  (*See* Toyota's Brief at 15).  Toyota is wrong.  The Federal Circuit has held, in no uncertain terms, that a party may raise new arguments in a district court action that that party did not raise during related ITC proceedings.  *See Texas Instruments, Inc.,* 90 F.3d at 1569.  Accordingly, this Court must consider Solomon's "power conversion means" argument.

Notably, Toyota does not dispute that if this Court actually considers this issue, the Court will agree with Solomon.  As explained above, claim 7 plainly recites sufficient structure for the "power conversion means" to take it outside the scope of § 112, ¶ 6.  In short, Solomon's goal here is simple—to get things right.  If prior mistakes were made regarding the law or the facts, they should be corrected.[5]

---

[5]  Toyota asserts that the Federal Circuit would have necessarily considered the means-plus-function issue on appeal as part of its *de novo* claim construction.  (Toyota's Brief at 12-13 and 16-17).  But that misapprehends the role of the Federal Circuit in reviewing lower court decisions.  While the Federal Circuit reviews claim construction *de novo*, it does not as a general rule consider issues that have not been raised in the lower court.  *See, e.g., Finnigan Corp. v. ITC*, 180 F.3d 1354, 1363 (Fed. Cir. 1999) ("That this court may review a lower tribunal's claim construction *de novo* . . . does not require us to consider claim construction arguments that were not raised before the Commission.").  Indeed, as the Federal Circuit has explained:

NY 72260822

## IV.   There are Fact Issues, Precluding Summary Judgment, Under the Federal Circuit's Prior Claim Construction

Even if the Court adopts the Federal Circuit's prior construction without any modification or clarifications, there are numerous issues of material fact that preclude summary judgment. This Court cannot grant summary judgment in the presence of such disputed factual issues. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1315 (Fed. Cir. 2009) ("because [the opposing party] provided evidence [in the form of an expert report] in support of its position . . . and because we must resolve any reasonable factual inferences in favor of the nonmoving party, we conclude that there is a material issue of fact."). Quite Simply, ***this Court cannot grant summary judgment on the record before it.***

### A.   Issues of Fact Pertaining to the "Power Conversion Means" Limitation

The Federal Circuit determined that Toyota's accused vehicles do not meet the "power conversion means" limitation based on the following factual determinations: (i) that the structure in Toyota's accused vehicles that corresponds to the "disk" in the '932 patent is solely the rotor

---

This is an appellate court.  By and large, it is our place to review judicial decisions-including claim interpretations and grants of summary judgment-reached by trial courts. No matter how independent an appellate court's review of an issue may be, it is still no more than that - a review.  With a few notable exceptions, such as some jurisdictional matters, ***appellate courts do not consider a party's new theories, lodged first on appeal***. If a litigant seeks to show error in a trial court's overlooking an argument, it must first present that argument to the trial court. ***In short, this court does not "review" that which was not presented to the district court***.

(*Sage Prods., Inc. v. Devon Indus., Inc*., 126 F.3d 1420, 1426 (Fed. Cir. 1997)).  Accordingly, Toyota's argument that the Federal Circuit would have necessarily considered the means-plus-function issue is incorrect.

Toyota further asserts that Solomon cannot now contest the construction of the "power conversion means" after stipulating to a construction in the ITC, citing *Applied Med. Res. Corp. v. U.S. Surg. Corp.*, 448 F.3d 1324 (Fed. Cir. 2006), *MyMail* v. *Am. Online,* 476 F.3d 1372 (Fed. Cir. 2007), *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336 (Fed. Cir. 2005), and *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836 (Fed. Cir. 1999).  (Toyota's Brief, pp. 15-16).  But none of those cases involved a situation, as here, in which a district court considered the effect of positions taken by a party during an ITC proceeding.  In that situation, the Federal Circuit has held that a party may raise any arguments it "believes are justified."  *See Texas Instruments*, 90 F.3d at 1569.  Moreover, the issue of whether a limitation is a means-plus-function element is a separate and distinct issue from what structure in the specification corresponds to the limitation assuming it is such a limitation.  Solomon had only agreed to the latter in the ITC, not the former, which is the issue here.

shaft, as opposed to the entire rotor assembly; and (ii) that the "rotor shaft" in Toyota's vehicles is not part of the motor.

As to (i), if the "power conversion means" limitation is treated as a means-plus-function limitation (which, as explained above, would be wrong), infringement is assessed by comparing the structure disclosed in the specification of the '932 patent for performing the recited function to the corresponding structure in the accused devices and determining whether the two structures are identical or equivalent.  *See IMS TECH. Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429-1430 (Fed. Cir. 2000).   Notably, ***the determination of corresponding structure in the accused devices is a question of fact.***  *Id*. at 1430.

The ITC determined that Toyota's accused devices do not include a "power conversion means" by comparing "disks" in the '932 patent to the "rotor shaft" in the accused devices. Solomon contends here, as it did before the ITC, that that comparison is incorrect.  Instead, the proper comparison is between the "disks" in the patent and Toyota's entire "rotor assembly"—of which the so-called "rotor shaft" is only one sub-component.   The Federal Circuit never addressed the factual issue of whether the ITC correctly identified the corresponding structure in the accused devices.   Significantly, the Federal Circuit's reasons for affirming the ITC's decision, which was based on comparing a disk to a shaft, does not apply to the entire "rotor assembly"—which is, in fact, disk-like.[6]  (Emadi Decl., ¶¶ 19-22).

With respect to (ii), the Federal Circuit held that Solomon disclaimed the use of shafts and therefore found no error in the ITC's finding that Toyota's transaxles did not meet the "power conversion means limitation" (as construed under 35 U.S.C. § 112, ¶ 6).  (*See* Toyota's Brief at 15).  The Federal Circuit based that holding on its determination that Toyota uses "rotor shafts rather than disks" in its accused transaxles.  (*See id*.).  In doing so, however, the Federal Circuit acknowledged that not *all* shafts in an integral combination had been disclaimed.

---

[6]  Toyota asserts that "Solomon did not argue that the Toyota devices have a 'disk' structure.  (Toyota's Brief, p. 13).  Toyota misremembers the ITC record—in fact, Solomon had argued that point.

In particular, in order to reconcile its disclaimer holding with Figure 5 of the '932 patent, which contains a shaft (namely, a sun gear extension) in the integral combination, the Federal Circuit held that the Figure 5 embodiment was not excluded under its claim construction because "the patentee understood the sun gear extension to be an element of the transmission unit." *Solomon*, 524 F.3d at 1313-14.[7]  Accordingly, under the Federal Circuit's construction, shafts that are elements of the transmission unit or, similarly, the motor are not disclaimed.

There is, therefore, an issue of fact regarding whether the so-called "rotor shafts" in Toyota's accused transaxles are each part of a respective motor.  ***The Federal Circuit never addressed that particular issue.***  However, just like the sun gear extension is an element of the transmission unit, the so-called "rotor shaft" in Toyota's accused product is, in fact, part of the motor.  (Emadi Decl., ¶¶ 23-24; Pesiridis Decl., ¶¶ 7-8; *see also* Edwards Decl., ¶¶ 8-9.  There is simply no reasonable debate on that point.  In any event, there is, at the very least, a fact issue, precluding summary judgment, regarding whether the so-called "rotor shafts" in Toyota's accused products are part of the motor and therefore not subject to disclaimer.[8]

Solomon disputes the above factual determinations by the ITC and has submitted the Declarations of Professor Emadi, Mr. Pesiridis, and Mr. Edwards in support of its position.  Accordingly, even under the Federal Circuit's construction, this Court cannot rule on summary

---

[7]  Contrary to Toyota's assertion (at Toyota's Brief, p. 21), the Federal Circuit never found that the sun gear extension is "not a shaft."  Nor could it—even Toyota's expert admitted in the ITC that the sun gear extension is a shaft.  (FID at 83; *see also* Emadi Decl., ¶ 23).

[8]  Toyota asserts that it cannot infringe under the Federal Circuit's construction, because "the Federal Circuit held that Solomon claims a disk, not a shaft, and that 'based on the use of shafts rather than disks, the Toyota transaxles are not structurally equivalent to the structure disclosed in the specification of the '932 patent.'"  (Toyota's Brief, p. 17).  Toyota is wrong.  The Federal Circuit did not hold that Solomon "claims a disk, not a shaft."  Instead, the Federal Circuit held that a *disk* is not structurally equivalent to a *shaft* (excluding shafts like the sun gear extension in Figure 5 of the '932 patent) in a one-to-one comparison.  The Federal Circuit never addressed the issue of whether a disk is structurally equivalent to a structure containing many components, one of which being identified as a shaft.  There is no basis whatsoever for concluding that the Federal Circuit would have reached the same conclusion regarding no structural equivalence had it compared the disk shown in the '932 patent to the entire rotor assembly in the accused products.

judgment that the "power conversion means" limitation is missing from Toyota's accused vehicles.

### B.   Issues of Fact Pertaining to the "Integral Combination" Limitation

The Federal Circuit determined that Toyota's accused vehicles did not meet the "integral combination" limitation based on numerous factual determinations by the ITC.  Most of those determinations were, in fact, rendered irrelevant by the Federal Circuit's claim construction—yet the Federal Circuit nonetheless relied upon them in affirming infringement.

*First*, the ITC based its finding of non-infringement on its factual determination that the element in Toyota's accused transaxles that corresponds to the "***motor element***" in the "integral combination" was solely the respective rotating magnets in motors of the accused transaxles. (ALJ's Final Initial and Recommended Determinations (Dkt. 29-2) ("FID") at 114-15).  *See IMS TECH*, 206 F.3d at 1430.  However, as explained below in connection with the "envelope" limitation, the Federal Circuit plainly did not limit the motor elements in the integral combination to the motor's magnets.  Under the Federal Circuit's construction, the element in the accused transaxles that correspond to the "motor element" in the "integral combination" is, in fact, the entire rotor assembly.  (Emadi Decl., ¶¶ 28-30).  The Federal Circuit never considered whether the "integral combination" limitation is met when the "rotor assembly," as opposed to just the magnets, is identified as the motor element in the integral combination.

*Second*, the ITC based its finding of non-infringement on its factual determination that there is a "shaft" (namely, the "rotor shaft") between the electric motor element and the transmission unit element in the accused transaxles.  (FID 114-15).  But, in so doing, the ITC looked only at the rotor shaft, instead of the entire rotor assembly.  When the entire rotor assembly is considered, and not just the "rotor shaft" subcomponent, it is, in fact, disk-like. (Emadi Decl., ¶¶ 19-22).  Again, the Federal Circuit never considered whether Toyota's accused transaxles infringe when the entire rotor assembly is considered, not just the rotor shaft.

- 15 -

*Third*, as discussed above in connection with the "power conversion means," the Federal Circuit never addressed the factual issue of whether the "rotor shafts" in Toyota's accused vehicles are each actually part of a motor and, therefore, not subject to disclaimer under the Federal Circuit's decision. Again, Solomon contends that that they are part of the motor and has provided factual support for that contention. (Emadi Decl., ¶¶ 23-24; Pesiridis Decl., ¶¶ 7-8; *see also* Edwards Decl., ¶¶ 8-9).

In view of the factual issues above, even under the Federal Circuit's construction, this Court cannot rule on summary judgment that the "integral combination" limitation is missing from Toyota's accused vehicles.[9]

### C.   Issues of Fact Pertaining to the "Envelope" Limitation

The Federal Circuit determined that Toyota's accused vehicles did not meet the "envelope" limitation based on the ITC's consideration of the "envelope" in Toyota's accused vehicles as limited to the volume in space swept out by the magnets in Toyota's motors. (FID 115-16). The Federal Circuit, however, clearly disagreed with the proposition that the claimed "envelope" was limited to the sweep of the magnets and expressly held that other elements could define the envelope—specifically, certain "cylindrical masses" which the Federal Circuit misidentified as motor elements.[10] The Federal Circuit nonetheless relied upon the ITC's factual determination that the "envelope" limitation was not met under the ITC's narrower definition of envelope.

*Neither the Federal Circuit nor the ITC has ever considered the issue of whether the envelope limitation is met when the sweep of other elements in Toyota's motors is considered,*

---

[9]   As set forth in the Joint Report (Dkt. 58 at 40), Solomon disagrees with Toyota's characterization (at Toyota's Brief, p. 18) of the Federal Circuit's construction of the "integral combination" limitation.

[10]   In particular, the Federal Circuit held that masses 28 and 38 in Figure 6 are motor elements in an integral combination that define the respective envelopes in the Figure 6 embodiment. *See Solomon Techs., Inc. v. Int'l Trade Comm'n*, 524 F.3d at 1316. That assumption, which the Federal Circuit came up with entirely on its own, is contrary to the positions of both parties (FID at 117) and is incorrect. (Emadi Decl., ¶ 26; Edwards Decl., ¶¶ 10-11; Pesiridis Decl., ¶¶ 10-11). Nonetheless, it establishes that the Federal Circuit did not construe the term envelope, as the ITC had, to be limited to the volume in space swept out by the rotation of the magnets alone.

*not just the magnets.* According to Dr. Emadi, however, that limitation is met. (Emadi Decl., ¶¶ 25-27). Accordingly, even under the Federal Circuit's construction, this Court cannot rule on summary judgment that the "envelope" limitation is missing from Toyota's accused vehicles.

**V.      This Court Must Independently Consider Solomon's Arguments Regarding Why there are Compelling Reasons to Modify or Clarify the Federal Circuit's Claim Construction**

Solomon also believes that there are compelling reasons for revisiting the ITC's claim construction, as modified by the Federal Circuit. *See, e.g., PCTEL, Inc.,* 2006 WL 734385, at *8. With respect to the "envelope" limitation, the Federal Circuit based its ruling on a rationale that it raised *sua sponte* and which was contrary to the arguments of both parties, as Toyota does not dispute.[11] With respect to the "integral combination" limitation (and the "power conversion means" limitation), the Federal Circuit's conclusion that the patentee had disclaimed shafts was inconsistent with its rulings that other features that were similarly treated during prosecution were not disclaimed. Also, the Federal Circuit's construction of "integral combination" does not clearly differentiate between shafts that are not disclaimed, such as the sun gear extension in Figure 5, from those that are.

Solomon believes there are compelling reasons, therefore, for modifying or clarifying the Federal Circuit's claim construction. Contrary to Toyota's position, this Court must independently construe those terms. Indeed, Solomon submits it would be a violation of its due process rights for the Court to grant summary judgment without independently considering Solomon's claim construction arguments. Since claim construction issues are not framed by Toyota's summary judgment motion, which rests solely on *stare decisis*, Toyota's motion must

---

[11]  Toyota asserts that Solomon's "s*ua sponte*' argument" is erroneous because the Federal Circuit is "entitled to adopt any construction it sees fit on appeal." Solomon's point however is that the Federal Circuit's construction was based on a fundamental misunderstanding of the technology in the patent (*i.e.*, that the masses are not motor elements) that Solomon never had an opportunity to address. (Emadi Decl., ¶ 26).

be denied so that Solomon can fully present its claim construction arguments at the appropriate time, as set by the Court.[12]

## VI.    Solomon Requires Additional Discovery Under Rule 56(f)

Before granting summary judgment, the Court must first ensure that there is no reasonable version of the material, disputed facts under which the non-movant could prevail and that judgment is correct as a matter of law.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  Because of the dispositive nature of such motions, courts have noted the critical importance of the need for discovery in the context of summary judgment motions.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To that end, in order to protect parties against judges swinging the summary judgment axe too hastily, Fed. R. Civ. P. 56(f) provides parties with a safety valve where they are genuinely in need of further time to marshal the facts essential to oppose a motion for summary judgment.  *See, e.g.*, *Stout v. St. Amour's Lawn Care, LLC*, No. 6:07-cv-1882, 2008 WL 816818, at *2 (M.D. Fla. 2008).

Here, there are several, critical topics that were not fully investigated during discovery in the earlier ITC proceedings.  (*See* Declaration of Kenneth L. Stein, concurrently filed herewith).  Those topics include at least: (1) whether Toyota (or its suppliers) considers the "rotor shafts" in Toyota's accused vehicles to be like the sun gear extension shown in Figure 5; (2) whether Toyota considers the "rotor assembly" to be disk-like; (3) whether Toyota considers the volume in space created by the rotation of all the motor elements in Toyota's accused vehicles, including the rotor assembly, to include, to a large extent, a transmission element or vice versa; (4) whether Toyota considers the structural elements of the "power conversion means" recited in claim 7 to be sufficient to perform the recited function of the power conversion means; (5) the criticality

---

[12]  For the Court's reference, Solomon has previously explained why the Federal Circuit's construction of envelope must be modified in the Joint Report (Dkt. 58) at 49-52, and why its construction of "integral combination" must be modified or clarified in the Joint Report (Dkt. 58) at 35-38.  Solomon has explained above why the construction of "power conversion means" applied by the Federal Circuit was incorrect.  Again, since Toyota's motion does not ask the Court to independently construe the claims, Solomon does not present its detailed claim construction arguments here, which would include an analysis of the patent, prosecution history and other evidence.  Solomon, however, requests the opportunity to present those arguments and evidence at the appropriate time.

NY 72260822

and importance of Solomon's patented technology to Toyota's accused hybrid vehicles; and (6) whether Toyota willfully infringed Solomon's patent by adopting Solomon's patented technology after Solomon disclosed its technology to Toyota.

Solomon believes that discovery on these topics will provide factual support for its claims of infringement, while simultaneously contradicting and disproving Toyota's assertions of non-infringement, as explained in detail in the concurrently filed Declaration of Kenneth L. Stein.  Given the foregoing numerous topics of discovery that have not been fully explored and the importance of factual determinations that will emanate therefrom, Solomon respectfully submits that it would be a violation of due process if this Court were to grant Toyota's motion for summary judgment on this record.

**VII.**   **Conclusion**

For the foregoing reasons, Toyota's motion for summary judgment should be denied.

Respectfully submitted,

Dated:  August 17, 2009

*/s/ Kenneth L. Stein*
Joseph Diamante
Kenneth L. Stein
Richard H. An
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, N.Y. 10038
Tel:  (212) 806-5400
Fax:  (212) 806-6006

Katherine C. Donlon
Florida Bar No.: 0066941
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd, Suite 1700
Tampa, Florida 33602
Direct: 813 222 2072
Tel:  (813) 228-7411
Fax:  (813) 229-8313

Attorneys for Plaintiff Solomon
Technologies, Inc.

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was forwarded this date to all counsel of record by ECF.


Dated:  August 17, 2009                          */s/ Richard H. An*
                                                        Richard H. An

NY 72260822